IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA WEST, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 C 5569 |
| | ) | |
| ACT II JEWELRY, LLC d/b/a | ) | |
| LIA SOPHIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Act II Jewelry, LLC d/b/a Lia Sophia's (Lia Sophia) partial motion to dismiss, and on Defendant Kiam Equities Corporation's (KEC), Defendant Victor K. Kiam, III's (Tory Kiam), and Elena Kiam's (collectively referred to as "Kiam Defendants") motion to dismiss. For the reasons stated below, Lia Sophia's motion to dismiss is denied, and Kiam Defendants' motion to dismiss is granted.

## BACKGROUND

Lia Sophia is allegedly a seller of fashion jewelry. As part of Lia Sophia's sales model, it allegedly provided a lifetime guarantee (Lifetime Guarantee) that promised that it would replace any jewelry it sold for as long as the customer owned

1

the jewelry. In the event that Lia Sophia could not replace the jewelry, the Lifetime Guarantee allegedly specified that customers would receive certificates (Certificates) that the customer could redeem for another piece of jewelry of comparable value. On December 1, 2014, Lia Sophia allegedly announced that it was winding down its U.S. and Canadian operations and would be ceasing operations. Lia Sophia also allegedly announced that it would honor the Lifetime Guarantee only until December 28, 2014. Plaintiffs contend that although Lia Sophia continues to operate its business in an on-line e-commerce operation, Lia Sophia refuses to honor the Lifetime Guarantee. Plaintiffs also contend that Lia Sophia induced its Sales Advisors to continue to sell and purchase additional products and to recruit other Sales Advisors during 2014, when Lia Sophia allegedly knew that it was not going to honor the Lifetime Guarantee.

Plaintiff Cindy West (West) allegedly worked as a Sales Advisor for Lia Sophia for nearly three years and purchased pieces of jewelry from Lia Sophia for her personal use. Plaintiff Kristine Hollander (Hollander) allegedly purchased Lia Sophia Jewelry for her personal use through an authorized Lia Sophia representative. KEC is allegedly the sole member of Lia Sophia. Tory Kiam is allegedly the Chief Executive Officer of Lia Sophia and President of KEC and one of the owners of KEC. Elena Kiam is allegedly the Creative Director of Lia Sophia and one of the owners of KEC. Plaintiffs include in their complaint breach of contract claims brought by Hollander against Lia Sophia and KEC (Count I), claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS

2

505/1 *et seq.* brought by Hollander (Count II), state law common law fraud claims brought by Hollander (Count III), unjust enrichment claims brought by Hollander (Count IV), ICFA claims brought by West (Count V), state law common law fraud claims brought by West (Count VI), and unjust enrichment claims brought by West (Count VII). Lia Sophia now moves to dismiss certain claims brought by West and Hollander and to strike the class allegations made by West. Kiam Defendants also move to dismiss all claims brought against them.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

I.  Lia Sophia's Motion to Dismiss

Lia Sophia moves to dismiss certain claims brought by West and certain claims brought by Hollander.

### A.  West's Claims Brought Against Lia Sophia

Lia Sophia moves to dismiss the ICFA claim, the fraud claim, and the unjust enrichment claim brought by West against Lia Sophia and to strike the class allegations brought by West.

#### 1.  Class Allegations

Lia Sophia moves to dismiss or strike the class allegations to the extent that they are brought by West. Lia Sophia contends that West signed a Sales Advisor Agreement that contained a waiver, which specified that West agreed not to serve as a class representative in litigation brought against Lia Sophia. Although Plaintiffs

4

preserved their right to pursue a motion for class certification in this action, this court has not yet certified a class in this action and there is no motion for class certification pending at this time. At the appropriate juncture in these proceedings, the court will reinstate Plaintiffs' motion for class certification and the parties will be given an opportunity to brief the motion. Thus, to the extent that Lia Sophia challenges West's right to pursue a class action or to act as a class representative, Lia Sophia's arguments are premature.

2. West's ICFA Claim Brought Against Lia Sophia

Lia Sophia argues that West is a citizen of Iowa and has not shown that her claims have a sufficient nexus with Illinois to fall within the protection of the ICFA. The Illinois Supreme Court has held that "a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005)(indicating that the standard applies even to plaintiffs who are not residents of Illinois).

In the instant action, Plaintiffs allege that West is a citizen of Iowa. (Compl. Par. 10). Plaintiffs also present allegations that suggest that Lia Sophia devised its alleged fraudulent scheme in Illinois. (Compl. Par. 12, 60). Plaintiffs further allege that West had direct communications with Lia Sophia in Illinois, such as when Lia Sophia allegedly had communications with Sales Advisors regarding sales incentives. (Compl. Par. 58). In addition, Plaintiffs allege that West purchased

5

supplies directly from Lia Sophia in Illinois. (Compl. Par. 60). Such allegations at this juncture are sufficient to indicate that the alleged misconduct by Lia Sophia relating to West occurred primarily and substantially in Illinois. Therefore, Lia Sophia's motion to dismiss the ICFA claim brought by West against Lia Sophia is denied. The court notes that at the summary judgment stage, Plaintiffs will need to point to sufficient evidence to show that the alleged conduct falls within the scope of the ICFA protections.

### 3. West's Fraud Claim Brought Against Lia Sophia

Lia Sophia argues that West is barred from pursuing fraud claims based on the Sales Advisor Agreement. For an Illinois common-law fraud claim, a plaintiff must establish: (1) that the defendant made "a false statement of material fact," (2) that the defendant knew that the "statement was false," (3) that the defendant intended the statement to "induce the plaintiff to act," (4) that the plaintiff relied "upon the truth of the statement," and (5) that the plaintiff suffered "damages . . . from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). Lia Sophia contends that language in the Sales Advisor Agreement forecloses any possibility of fraud on Lia Sophia's part. For example, Lia Sophia contends that the Sales Advisor Agreement provides that it has the right to terminate the Sales Advisor Agreement "for any reason immediately upon written notice to the other party." (W Mot. 13). However, West is not seeking to challenge Lia Sophia's right to terminate the Sales Advisor Agreement. Instead, West is seeking to hold Lia Sophia liable for

6

fraudulent conduct such as allegedly knowingly deceiving West and inducing her to continue to make sales and recruit new advisors under false pretenses. (Compl. Par. 108). Lia Sophia has not pointed to any language in the Sales Advisor Agreement that would preclude the possibility of such fraudulent conduct. While Lia Sophia can point to contractual language in the Sales Advisor Agreement at the summary judgment stage, Lia Sophia has not pointed to any contractual language that on its face would negate the plausibility of West's allegations of fraud. Therefore, the motion to dismiss West's fraud claim brought against Lia Sophia is denied.

4. West's Unjust Enrichment Claim Brought Against Lia Sophia

Lia Sophia contends that West cannot pursue an unjust enrichment claim because West has asserted a breach of contract claim. Under Illinois law, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 570-71 (7th Cir. 2016)(quoting *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004)). West indicates that she is not basing her unjust enrichment claim upon her contractual relationship with Lia Sophia. Instead, West bases her unjust enrichment claim on the alleged fraud by Lia Sophia that involved conduct that was not covered by any contractual relationship. West contends that Lia Sophia knew in 2014 that as it continued to sell jewelry that it was not going to honor the Lifetime Guarantee. That alleged fraud is separate and apart from the alleged contractual relationship and to the extent that Lia

Sophia was unjustly enriched by such fraud, West can pursue an unjust enrichment claim. Therefore, the motion to dismiss West's unjust enrichment claim brought against Lia Sophia is denied.

### B. Hollander's Claims Brought Against Lia Sophia

Lia Sophia moves to dismiss the ICFA claim, the fraud claim, and the unjust enrichment claim brought by Hollander against Lia Sophia.

#### 1. Hollander's ICFA Claim Brought Against Lia Sophia

Lia Sophia argues that Hollander, like West, is a citizen of Iowa and has not shown that her claims have a sufficient nexus with Illinois to fall within the protection of the ICFA. As indicated above, a plaintiff can "pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 853-54. Plaintiffs allege that Lia Sophia formulated its alleged scheme to defraud Plaintiffs in its headquarters in Illinois and that it sent out the fraudulent communications via the internet from its Illinois headquarters. (Compl. Par. 12, 86). Plaintiffs also identify certain communications from Lia Sophia that focus on Lia Sophia's activities in Illinois and the need for customers to deal directly with Lia Sophia. For example Plaintiffs allege that Lia Sophia stated that "ALL returns or exchanges must be handled through the company and NOT the advisor." (Compl. Par. 26-27). In addition, Lia Sophia allegedly informed all customers that its orders are shipped

directly from Lia Sophia in Illinois. (Compl. Par. 12, 26-27). Such allegations at this juncture are sufficient to suggest that the alleged misconduct by Lia Sophia relating to Hollander occurred primarily and substantially in Illinois.

Lia Sophia argues that Hollander dealt exclusively with a Lia Sophia Sales Advisor in Iowa. However, it is premature at this juncture to consider such evidence outside of the pleadings. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011)(stating that while the court could not "say that the complaint and answer contain enough to point unerringly to Illinois law," the Court could not "say that the complaint does not defeat application of Illinois law" and that the court could not consider evidence at the pleadings stage).

Lia Sophia also argues that Hollander's ICFA claim is based upon a contractual guarantee and cannot be a basis for fraud under Illinois law. A breach of a contractual obligation, "without more, is not actionable under the" ICFA. *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006)(internal quotations omitted)(quoting *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992 (Ill. App. Ct. 2000)). Hollander argues that her ICFA claim is based upon more than the Lifetime Guarantee. Hollander does assert that Lia Sophia provided a guarantee and that Lia Sophia failed to honor that guarantee. However, Hollander also alleges that "for much of 2014" Lia Sophia knew that it was going to be closing operations, and knew that it was not going to honor the Lifetime Guarantee. (Compl. Par. 5, 84). Hollander also contends that she purchased jewelry from Lia Sophia in 2014. (Compl. Par. 53). Thus, Hollander has presented sufficient allegations at this

9

pleadings stage to state a valid ICFA claim. Lia Sophia contends that Hollander failed to allege a specific date that Lia Sophia decided it would not honor the Lifetime Guarantee and Hollander failed to allege the specific dates that she purchased jewelry. Hollander, however, is not required to provide such detail in her pleadings to state a valid ICFA claim. At the summary judgment stage, Hollander will need to point to sufficient evidence showing that Lia Sophia did not intend to honor the Lifetime Guarantee at some point and that Hollander purchased jewelry after that point. Therefore, Lia Sophia's motion to dismiss the ICFA claim brought by Hollander against Lia Sophia is denied.

2. Hollander's Fraud Claim Brought Against Lia Sophia

Lia Sophia argues that Hollander's fraud claim is based upon a contractual guarantee and cannot be a basis for fraud under Illinois law. However, as indicated above in regard to Hollander's ICFA claim, Hollander has premised her allegations of fraudulent conduct upon more than the contractual relationship she formed with Lia Sophia. Therefore, Lia Sophia's motion to dismiss the fraud claim brought by Hollander against Lia Sophia is denied.

3. Hollander's Unjust Enrichment Claim Brought Against Lia Sophia

Lia Sophia contends that Hollander cannot pursue an unjust enrichment claim because Hollander has asserted a breach of contract claim. However, as explained above, Hollander has alleged facts to suggest a valid fraud claim and Hollander can

base her unjust enrichment claim upon such alleged fraudulent conduct. Hollander has also pled the unjust enrichment claim in the alternative. Therefore, Lia Sophia's motion to dismiss the unjust enrichment claim brought by Hollander against Lia Sophia is denied.

II. Kiam Defendants' Motion to Dismiss

Kiam Defendants argue that Plaintiffs have not alleged sufficient facts to suggest that they should be held liable for the alleged misconduct by Lia Sophia. Generally, a corporation has an existence apart from "its shareholders, officers, directors and related corporations, and those individuals and entities ordinarily are not subject to corporate liabilities." *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009); *see also* Del. Code Ann. tit. 6, § 18-303(a)(stating that "no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company"). However, a plaintiff may seek to hold such individuals or entities liable under the piercing of the corporate veil theory, which "is an equitable remedy governed by state law." *Laborers' Pension Fund*, 580 F.3d at 610. The parties agree that since Lia Sophia is incorporated in Delaware, Delaware state law governs the piercing of the corporate veil theory in this case. (K Mot. 4); (Resp. K Mot. 7 n.2).

Under Delaware law, a plaintiff can "pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its

owner.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456-57 (2d Cir. 1995)(quoting in part *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)). To hold a defendant personally liable under the piercing the corporate veil theory, a plaintiff must establish: (1) that the defendant and the sham entity "operated as a single economic unit," and (2) that failure to pierce the corporate veil would result in "an overall element of injustice or unfairness." *Wilson v. Thorn Energy, LLC*, 787 F. Supp. 2d 286, 297 (S.D.N.Y. 2011); *see also Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 2015 WL 5773895, at *50 (S.D.N.Y. Sept. 30, 2015)(stating that the test "focus[es] on (1) whether the [dominant shareholder and the corporation] in question operated as a single economic entity, and (2) whether there was an overall element of injustice or unfairness"). In determining whether there is a unity of interests the court can consider factors such as: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528-29 (D. Del. 2008); *see also Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *11 (Del. Ch. 2008)(stating that "[i]t is only the exceptional case where a court will disregard the corporate form").

    A.  Individual Defendants

In the instant action, Plaintiffs contend that they can pierce the corporate veil in regard to Tory Kiam and Elena Kiam (collectively referred to as "Individual Defendants") because they allegedly perpetrated the fraud themselves. (Reps. 6). Plaintiffs must however show more than that the Individual Defendants engaged in wrongful conduct. Although Plaintiffs accuse Individual Defendants of committing fraud in regard to the Lifetime Guarantee, the fraud that must be established to pierce the corporate veil would be the use of Lia Sophia by Individual Defendants as a fictitious sham entity for their own interests.

Plaintiffs also failed to suggest that the corporate veil should be pierced in regard to the Individual Defendants because Plaintiffs have failed to allege facts that suggest that KEC was a shell corporation for Individual Defendants' interests. Plaintiffs allege only that KEC "took distributions from Lia Sophia. . . ." (Compl. Par. 46). There are no allegations that the Individual Defendants themselves took funds from Lia Sophia. To the extent that Plaintiffs would argue that KEC was itself a sham company for the Individual Defendants' personal use, Plaintiffs have failed to present facts in the complaint to suggest such a conclusion. Plaintiffs' allegations that Individual Defendants "benefitted from [the] distributions by virtue of their ownership of KEC," is not sufficient to show that KEC was a sham company. (Compl. Par. 13). Nor have Plaintiffs shown that there will be any injustice or unfairness if the corporate veil is not pierced to hold Individual Defendants liable.

Plaintiffs also contend that they can bring claims directly against the Individual Defendants for fraud because they allegedly were personally involved in

13

the alleged misconduct. However, Plaintiffs have failed to alleged facts to plead any fraud-based claims against Individual Defendants with particularity in accordance with Federal Rule of Civil Procedure 9(b) (Rule 9(b)). *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)(stating that to plead with particularity, the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story"). Plaintiffs allege generally that Lia Sophia made alleged fraudulent representations, but Plaintiffs allege only a few statements made personally by Individual Defendants such as Tory Kiam's alleged statement relating to a "Black Friday" sale, which did not include a promise relating to the Lifetime Guarantee. Plaintiffs have failed to present facts as to either of the Individual Defendants that would suffice under Rule 9(b). Thus, the Individual Defendants cannot be held liable for Lia Sophia's alleged wrongdoing.

### B. KEC

In regard to piercing the corporate veil to hold KEC liable, Plaintiffs allege that the Individual Defendants were heavily involved in the day to day operations of Lia Sophia, that Elena Kiam is the Creative Director of Lia Sophia, and that Tory Kiam is the CEO of Lia Sophia, and that KEC is the sole member of Lia Sophia. (Compl. Par. 43). Plaintiffs also alleged that KEC controlled the operations of Lia Sophia. (Compl. Par. 87). However, the mere fact that Kiam Defendants may have had extensive control over Lia Sophia does not show that Lia Sophia was merely a sham corporation used to further the interests of KEC. Nor is it sufficient that

Plaintiffs have alleged that Kiam Defendants mismanaged Lia Sophia's funds. (Compl. Par. 45-46). Plaintiffs' allegations, even when accepted as true, do not rise to the level that the court should take the extraordinary step of piercing the corporate veil.

Plaintiffs also make a vague reference to the Individual Defendants "siphoning millions of dollars out of the company." (Compl. Par. 34). First of all, Plaintiffs fail to even suggest that such facts are more than a mere possibility since Plaintiffs acknowledge in the complaint that it was only "rumored that" such "siphoning" occurred. (Compl. Par. 34). Secondly, although Plaintiffs use the sinister sounding word "siphoning," Plaintiffs fail to allege facts to suggest that Kiam Defendants did anything other than take the distribution as alleged by Plaintiffs or to suggest that KEC took any action that was unlawful or not in the ordinary course of business. Plaintiffs also fail to adequately present facts to indicate that Lia Sophia was undercapitalized or to indicate that Lia Sophia failed to observe corporate formalities. Nor have Plaintiffs shown that there will be any injustice or unfairness if the corporate veil is not pierced to hold KEC liable. Plaintiffs have thus not alleged sufficient facts to suggest that the corporate veil should be pierced to hold KEC liable. *See Heyman v. Beatrice Co.*, 1995 WL 151872, at *7 (N.D. Ill. 1995)(stating that "Delaware courts will allow the corporate veil to be pierced only under the most exceptional of circumstances"). Based on the above, Kiam Defendants' motion to dismiss is granted.

## CONCLUSION

Based on the foregoing analysis, Lia Sophia's motion to dismiss is denied, and Kiam Defendants' motion to dismiss is granted.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Samuel Der-Yeghiayan
　　　　　　　　　　　　　　　　　United States District Court Judge

Dated:　March 18, 2016