**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA WEST, KRISTINE HOLLANDER, JENNIFER ZIMMERMAN, MARY ROMAN, MARIE ESPOSITO, and MICHELLE BALLON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:15-cv-05569 |
| v. | ) ) ) | Hon. Thomas M. Durkin |
| ACT II JEWELRY, LLC, a Delaware limited liability corporation d/b/a lia sophia, and VICTOR K. KIAM, III, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel for Plaintiffs*
*and the Settlement Classes*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

ARGUMENT .............................................................................................................. 6

    A.     Class Counsel Seeks One Third Of The Settlement
           Fund *After* Deduction Of Settlement Administration
           Expenses, Which Is Well Within Seventh Circuit Guidelines ................................... 6

    B.     Class Counsel Should Be
           Reimbursed For Its Out-Of-Pocket Expenses ........................................................... 12

    C.     The Incentive Awards Sought By Plaintiffs Are Appropriate ................................... 12

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
    No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)........................................ 13

*Arenson v. Bd. of Trade of City of Chi.,*
    372 F. Supp. 1349 (N.D. Ill. 1974) ................................................................................ 11

*Briggs v. PNC Fin. Servs. Grp., Inc.,*
    No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016). ...................................... 7

*Castillo v. Noodles & Co.,*
    No. 16-cv-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)................................. 12, 13

*Cifuentes v. CEVA Logistics U.S., Inc.,*
    No. 16-cv-1957, 2017 WL 4792425 (S.D. Cal. Oct. 23, 2017)........................................ 11

*City of Greenville v. Syngenta Crop Protection, Inc.,*
    904 F. Supp. 2d 902 (N.D. Ill. 2012) ............................................................................. 12

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998). ........................................................................... 12, 13, 14

*DiGiacomo v. Plains All Am. Pipeline,*
    No. H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ..................................... 12

*Espenscheid v. DirectSat USA, LLC,*
    688 F.3d 872 (7th Cir. 2012) ........................................................................................ 13

*Garcia v. J.C. Penny Corp.,*
    No. 12-cv-3687, 2017 WL 3449077 (N.D. Ill. Aug. 9, 2017) ........................................... 7

*Gaskill v. Gordon,*
    942 F. Supp. 382 (N.D. Ill. 1996) .................................................................................... 7

*Heekin v. Anthem, Inc.,*
    No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)................ 7

*In re Cenco, Inc. Secs. Litig.,*
    519 F. Supp. 322 (N.D. Ill. 1981) .................................................................................. 11

*In re Charter Comm's., Inc. Sec. Litig.,*
    No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005)........................................ 12

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,*
   No. 09-cv-3690, MDL No. 2013, 80 F. Supp. 3d 838 (N.D. Ill. 2015) ............................ 7

*In re Rite Aid Corp. Sec. Litig.,*
   362 F. Supp. 2d 587 (E.D. Penn. 2005) ...................................................................... 12

*In re Sw. Airlines Voucher Litig.,*
   No. 11 C 8176, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) .......................................... 14

*In re Synthroid Mktg. Litig.,*
   264 F.3d 712 (7th Cir. 2001) ......................................................................................... 8

*Kitson v. Bank of Edwardsville,*
   No. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ........................................ 7

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*
   No. 16-cv-157, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017)....................................... 11

*McCue v. MB Fin., Inc.,*
   No. 15 CV 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) .................................... 7, 12

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014) .......................................................................................... 7

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2015) ............................................................................ 11

*Slaughter v. Wells Fargo Advisors, LLC,*
   No. 13-cv-6368, 2017 WL 3128802 (N.D. Ill. May 4, 2017)........................................... 7

*Spicer v. Chi. Bd. Options Exch., Inc.,*
   844 F. Supp. 1226 (N.D. Ill. 1993). .............................................................................. 14

*Van Vranken v. Atl. Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................... 11

*Williams v. Rohm and Haas Pension Plan,*
   658 F.3d 629 (7th Cir. 2011) ........................................................................................ 11

*Young v. Cty. of Cook,*
   No. 06-cv-552, 2017 WL 4164238 (N.D. Ill. Sept. 20, 2017)......................................... 7

*Zolkos v. Scriptfleet, Inc.,*
   No. 12 Civ. 8230 (GF), 2015 WL 4275540 (N.D. Ill. July 13, 2015). ........................... 12

**Statutes and Rules**

Fed. R. Civ. P. 23 .................................................................................................. 12

**Other Authorities**

Alba Conte,
   *Attorney Fee Awards* (2d ed. 1993) ................................................................ 11

Richard Posner,
   *Economic Analysis of Law* (2d ed. 1984).......................................................... 8

Plaintiffs Cynthia West ("West"), Kristine Hollander ("Hollander"), Jennifer Zimmerman ("Zimmerman"), Mary Roman ("Roman"), Marie Esposito ("Esposito"), and Michelle Ballon ("Ballon") (collectively, the "Plaintiffs"), by their counsel, respectfully submit the following Motion For Attorneys' Fees, Costs, And Incentive Awards, and move for an Order awarding: (1) attorneys' fees in the amount of one-third of the Settlement Fund after deduction of settlement administration expenses; (2) unreimbursed litigation costs; and (3) incentive awards to Plaintiffs for their services as class representatives.

## **INTRODUCTION**

Nearly three years ago, Class Counsel began its investigation and analysis of what became this lawsuit – numerous breach of contract, statutory and common law fraud, and unjust enrichment claims on behalf of *three* nationwide classes of consumers and sales representatives – in an effort to provide relief for millions of individuals damaged by Defendant Act II Jewelry, LLC's ("Act II") sudden closure. Without any guarantee of payment or success, Class Counsel aggressively prosecuted this litigation, which included over a year of extensive discovery and *four* private mediations.

After successfully negotiating a class-wide settlement that provides substantial, immediate monetary benefits to the classes, Class Counsel now seeks the Court's approval of an attorneys' fee award of one-third of the all-in, non-reversionary $6,700,000 common fund (the "Settlement Fund") after deduction of settlement administration expenses. The settlement administration expenses were $1,300,000, which includes the cost of a wide-reaching notice program. After deducting those $1,300,000 in settlement expenses, there is $5,400,000 remaining, from which Class Counsel seek an attorneys' fees award of one-third ($1,800,000), plus unreimbursed litigation costs ($24,349.02). This is consistent with Seventh Circuit

jurisprudence and cases in this District, which repeatedly recognize Class Counsel's right to seek a percentage of the common fund that Class Counsel created. Notably, pursuant to the terms of the Settlement, the entire Settlement Fund will be disbursed, and thus there is no issue concerning claims rates or class benefits—after the payment of settlement administration expenses and attorneys' fees, the Class will receive approximately $3.55 million, and the claims rate only effects how much each individual class member will receive, not how much the entire Class will receive.

In addition, although it is not necessary to the Court's award of attorneys' fees, a lodestar cross check also shows that the attorneys' fee award is well within acceptable guidelines. Through the date of this filing, Class Counsel has expended 1,810.20 hours prosecuting this matter, incurring a lodestar of $1,038,402. A lodestar cross-check thus reflects that an award of $1,800,000 constitutes only a 1.7 multiplier on reported time, which is well within the accepted range in this District. Plaintiffs also seek incentive awards in the amounts of: (a) $10,000 to Plaintiff West; (b) $5,000 to Plaintiffs Hollander and Zimmerman; and (c) $2,500 to Plaintiffs Roman, Esposito, and Ballon, which is reasonable to compensate Plaintiffs for their time and risk as class representatives.

Accordingly, as further set forth below, Plaintiffs respectfully request that their motion be granted.

## **BACKGROUND**

Defendant Act II did business as lia sophia, and sold costume jewelry to consumers through a party planning method that utilized sales advisors who sold jewelry at parties hosted for that purpose, similar to the method used by Avon and Tupperware. Act II generally sold its full-price jewelry with a lifetime replacement guarantee. On December 1, 2014, Act II suddenly

announced that it would wind down its direct sales business, including fulfillment of claims under the lifetime replacement guarantee, by the end of the month – surprising both its customers as well as its sales advisors. In other words, Act II repudiated the lifetime replacement guarantee, and laid off its sales force.

On June 23, 2015, Plaintiffs West and Hollander brought a putative class action against Act II, Kiam Equities Corporation ("Kiam Equities"), Victor K. Kiam, III, and Elena Kiam, in the United States District Court for the Northern District of Illinois (the "Court"), No. 15-cv-5569. (Dkt. No. 1.) Plaintiffs West and Hollander alleged causes of action for breach of contract, violation of the Illinois Consumer Fraud Act, common law fraud, and unjust enrichment against these Defendants for revoking the lifetime warranties on their jewelry, and for making material misrepresentations or omissions to its sales advisors by inducing them to continue working as sales advisors (which entailed the purchase of supplies and jewelry from the Defendants), even though the Defendants knew the sales advisors would not be able to recoup those expenditures because Defendants had planned to close the business at least six months prior to making the announcement. (*Id.* at ¶¶72-128.) Plaintiff West sought to represent a class of Act II sales advisors who had been harmed by Act II's conduct, while Plaintiff Hollander sought to represent a class of Act II customers who had been injured by Act II's repudiation of the lifetime replacement guarantee for the jewelry it had sold.

Following the filing of the suit, on October 19, 2015, the Parties held a mediation with the Honorable James F. Holderman (Ret.) in Chicago, Illinois. Prior to the mediation, the Parties engaged in limited discovery and exchanged written mediation statements summarizing their respective positions concerning the factual and legal issues in the litigation. This mediation did not result in settlement.

Following the mediation, the Defendants moved to dismiss the case on multiple grounds. (Dkt. No. 35.) After full briefing before the Court, on March 18, 2016, the Court denied Act II's motion but granted the remaining Defendants' motion, dismissing Kiam Equities Corporation, Victor Kiam, and Elena Kiam from the litigation. (Dkt. No. 58.) Act II also filed an answer denying all material allegations, along with affirmative defenses. (Dkt. No. 34.) The parties then engaged in discovery (described more fully below).

While discovery was ongoing, on November 30, 2016, Plaintiffs filed their First Amended Class Action Complaint (the "First Amended Complaint"), alleging claims for breach of contract, violation of the Illinois Consumer Fraud Act, fraud and unjust enrichment. (Dkt. No. 75.) The First Amended Complaint added four new class representatives – Plaintiffs Zimmerman, Roman, Esposito, and Ballon – and sought to represent a third putative class – all individuals who joined Act II as sales advisors in 2014 and who purchased initial starter kits after May 31, 2014. (*Id.* at ¶¶12-15, 132.) Plaintiffs' First Amended Complaint also re-named Victor Kiam as a co-Defendant. (*Id.* at ¶17.) On December 20, 2016, Defendants filed their Answer to Plaintiffs' First Amended Complaint and denied all material allegations. (Dkt. No. 77.)

As a result of the First Amended Complaint, Plaintiffs sought to represent three separate classes with three distinct types of claims: (1) approximately 15,000-20,000 former Act II sales advisors whose customer information had been utilized by Act II to compete against them in Act II's post-closing sell-off of over $11 million of inventory; (2) approximately four million customers who had purchased jewelry within the past four to five years whose jewelry was no longer guaranteed to be replaced upon return; and (3) approximately 1,000-2,000 new sales advisors who joined Act II while, unbeknownst to those new sales advisors, Act II was planning on closing.

Between April 2016 and April 2017, the Parties engaged in multiple rounds of written and electronic discovery regarding the claims and defenses in this litigation. Although the Parties produced and analyzed a substantial number of documents, discovery in the case was significantly complicated by the wind-down and closure of Act II's active business. Nevertheless, discovery was extensive, as it involved: (a) review of 12,267 pages of documents produced by Plaintiffs; (b) review of 20,111 pages of documents produced by Act II; (c) review of documents produced by Victor Kiam; (d) review of documents produced by Kiam Equities; (e) review of documents produced by Elena Kiam; (f) review of several thousand pages of documents produced by eight different third parties subpoenaed by Plaintiffs in addition to computer media provided by those third parties; (g) the preparation for taking and/or defending the depositions of approximately ten fact witnesses from Act II and various third-parties; and (h) the preparation for taking and/or defending the depositions of the six Class Representatives. In addition, Class Counsel interviewed over twenty putative class members from the three classes as part of their discovery efforts in the case and evaluated that evidence for both class certification and merits purposes.

In the spring of 2017, the Parties held depositions for Plaintiffs West, Hollander, and Zimmerman, and set dates for approximately ten other depositions. Following the first set of depositions, the Parties resumed settlement discussions and engaged in three separate, extensive private mediations over the course of approximately four months. The parties also continued to engage in discovery concerning class data and class identification issues. As a result of those continued discussions and mediations, on July 17, 2017, during a mediation before Judge Holderman (the fourth mediation in this litigation), the Parties agreed to a settlement in principal. A Settlement Term Sheet was subsequently executed on August 1, 2017.

During August and September 2017, Class Counsel worked extensively with the Settlement Administrator, Heffler Claims Group LLC, to analyze confirmatory class data in order to: (a) finalize the terms of the Settlement; and (b) structure a notice plan consistent with Fed. R. Civ. P. 23(c)(2)(B). In September 2017, after several exchanges of drafts and edits, and numerous conference calls, the Parties agreed to the form and content of the Settlement Agreement, which was executed in November 2017.

On November 21, 2017, Plaintiffs moved for Preliminary Approval of Class Action Settlement (Dkt. No. 93), which the Court approved during the motion hearing on November 29, 2017 (Dkt. No. 97). The next day, the Court issued the written preliminary approval order. (Dkt. No. 98).[1] Since then, Class Counsel has worked with the Settlement Administrator to finalize the notice plan and to effectuate notice. The notice campaign began in January 2018 and has been proceeding in full force, with nearly 140,000 claims filed thus far.

As of the date of this filing, Class Counsel has expended 1,810.20 hours prosecuting this litigation, constituting a total lodestar amount of $1,038,402. (*See* Declaration of Todd. L. McLawhorn ("McLawhorn Decl.") ¶4, attached hereto as Exhibit 1.)

## ARGUMENT

**A.**    **Class Counsel Seeks One-Third Of The Settlement Fund *After* Deduction Of Settlement Administration Expenses, Which Is Well Within Seventh Circuit Guidelines.**

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating attorneys' fees in common fund settlements, such as this one. *Pearson v. NBTY, Inc.,* 772 F.3d 778, 782 (7th Cir. 2014) ("[T]he presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a

---

[1] Due to a minor clerical error, the Preliminary Approval Order was subsequently amended on December 6, 2017. (Dkt. No. 99.)

half of the total amount of money going to class members and their counsel."); *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.,* No. 09-cv-3690, MDL No. 2013, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (Dow, Jr., J.) (stating that the percentage of the fund method "has emerged as the favored method for calculating fees in common-fund cases in this district"). As such, courts in this District have generally adhered to awarding attorneys' fees totaling approximately one-third of the settlement fund. *See, e.g., Young v. Cty. of Cook,* No. 06-cv-552, 2017 WL 4164238, at *5-6 (N.D. Ill. Sept. 20, 2017) (Kennelly, J.) (awarding 33% of $32.5 million common fund); *Garcia v. J.C. Penny Corp.,* No. 12-cv-3687, 2017 WL 3449077, at *2 (N.D. Ill. Aug. 9, 2017) (Gottschall, J.) (awarding 35% of $5 million settlement fund); *Slaughter v. Wells Fargo Advisors, LLC,* No. 13-cv-6368, 2017 WL 3128802, at *3, 18, 24 (N.D. Ill. May 4, 2017) (Leinenweber, J.) (awarding 25% of $35.5 million settlement fund); *Briggs v. PNC Fin. Servs. Grp., Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *3-4 (N.D. Ill. Nov. 29, 2016) (St. Eve, J.) (awarding 33% of $6 million settlement fund).[2]

And while the Seventh Circuit has held that the range of appropriate percentage fee awards may be as high as 50%, *Pearson*, 772 F.3d at 782, Class Counsel seeks only one-third here – and only *after* the deduction of all settlement administration expenses at that. This amounts to an attorneys' fee award of $1,800,000, which is one third of the Settlement Fund ($6,700,000) after subtracting the settlement administration expenses ($1,300,000). Generally, the contingency fee awarded to class counsel must be greater than the fees that the same

---

[2] *See also Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (38% fee award); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (33% fee award after deduction of settlement administration expenses); *Kitson v. Bank of Edwardsville,* No. 08-507-GPM, 2010 WL 331730, at *3 (S.D. Ill. Jan. 25, 2010) (33% fee award); *Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *5 (S.D. Ind. Nov. 20, 2012) ("[T]he Court finds there is support from other cases in this Circuit and nationally that support a market rate of 33.3%." (citing 12 cases within the Seventh Circuit where fees were awarded of at least 33%)).

attorneys would charge their clients in non-contingency cases. As the Honorable Richard Posner (Ret.) has explained:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The interest rate on such a loan is high because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is so much higher than that of conventional loans.

Richard Posner, *Economic Analysis of Law* § 21.9 (2d ed. 1984).

In *In re Synthroid Mkting. Litig.,* the Seventh Circuit held that the market rate for legal fees depends in part on the following: (1) the risk of nonpayment a firm agrees to bear; (2) the quality of its performance; (3) the amount of work necessary to resolve the litigation; and (4) the stakes of the case. 264 F.3d 712, 721 (7th Cir. 2001). Consideration of these factors confirms that an attorneys' fee award of one-third of the Settlement Fund after deduction of settlement administration expenses is appropriate.

Here, Class Counsel has incurred a significant risk of nonpayment by prosecuting this matter. This was not a simple case: On one hand, Class Counsel sought relief for jewelry customers under breach of contract, consumer fraud statutes, common law fraud, and unjust enrichment theories, for their losses with regard to the jewelry's lifetime warranty. On the other hand, Class Counsel also sought relief for sales advisors under consumer fraud statutes, common law fraud, and unjust enrichment theories, for their losses in relying on Act II's misrepresentations and omissions. This required juggling different claims on multiple fronts, all the while against a defendant that had gone out of business and therefore presented no sure chance of recovery.

Furthermore, Defendants, through able counsel at SmithAmundsen LLC, presented numerous defenses which, if any one were successful, would result in *no* benefit to the Classes. (Dkt. No. 34.) Indeed, a hotly-contested motion to dismiss resulted in the dismissal of almost all of the Defendants. (Dkt. No. 58.) Accordingly, the stakes were high and there was no certainty that Plaintiffs would succeed, or that the case would settle, at the inception of this lawsuit. Although Class Counsel maintains that these defenses can and would be overcome on a contested basis, the risk presented is obvious. The Settlement promotes judicial economy, balances the risks faced by the Class, and provides immediate and substantial monetary benefits to the Class – $3,548,150.98 if the Court awards the proposed attorneys' fees, costs, and incentive awards. In sum, Class Counsel believes they have achieved an excellent result – which is further bolstered by the Court's immediate granting of preliminary approval of the Settlement at the motion hearing. (Dkt. No. 97.)

Class Counsel has expended a total of 1,810.20 hours, thus far, prosecuting this litigation.[3] This represents a substantial amount of work, including the following:

- **Pre-Complaint Factual & Legal Investigation**. Class Counsel began conducting a factual and legal investigation in 2015, starting with interviews with Plaintiffs West and Hollander and analysis of their claims. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; (3) the elements and potential defenses for each of the proposed claims; and (4) the various groups of people who had been impacted by Act II's conduct and appropriate class definitions for those groups. Once the initial factual and legal research had been completed, Class Counsel began: (1) reviewing extensive documentation provided by Plaintiffs West and Hollander; (2) formulating the claims; (3) drafting, preparing, and filing the Complaint; and

---

[3] The lodestar will increase from today's date, as more work remains. Class Counsel will continue to field inquiries from and assist class members, and will subsequently prepare papers for final approval and handle any objections that are raised.

(4) engaging in correspondence with Plaintiffs regarding the complaint and the case in general.

- **Mediation with Judge Holderman**. Shortly after Class Counsel filed the original Complaint, the Parties engaged in limited discovery, prepared and exchanged written mediation statements summarizing their respective positions concerning the factual and legal issues in this litigation. The Parties held a mediation before retired Judge Holderman in Chicago, Illinois.

- **Motion To Dismiss.** After the mediation, Defendants filed a motion to dismiss, which was fully briefed. Plaintiff's response to Defendants' motion to dismiss was thoroughly researched and extensive, and included numerous exhibits.

- **Discovery.** Following the motion to dismiss, Class Counsel engaged in over a full year of discovery, which involved multiple rounds of written and electronic discovery to Defendants as well as eight third parties, each of whom was represented by different counsel and each of whom made various objections to discovery. In addition, because Act II had closed (which necessitated third party discovery for documents that Act II had difficulty locating), Act II's electronic discovery took more time than usual, and Class Counsel spent significant time trying to determine and confirm the data that supported the three classes that Class Counsel sought to represent. Discovery was extensive, involving the review and production of tens of thousands of documents. Class Counsel also prepared Plaintiffs' discovery responses and production, which also numbered in the thousands of documents. Further, Class Counsel prepared to take ten depositions of individuals from Act II and various third parties, prepared for the depositions of all six Class Representatives, and defended three depositions of Class Representatives.

- **First Amended Complaint.** During the discovery process, Class Counsel conducted further interviews with potential Class members and filed a First Amended Complaint, which added not only four additional Class Representatives (Zimmerman, Roman, Esposito, and Ballon), but also an additional putative class of new Act II sales advisors. Further, through the benefit of discovery, Class Counsel were able to re-name Victor Kiam as co-Defendant.

- **Mediation and Settlement.** Following discovery, the Parties resumed settlement negotiations and engaged in *three* separate, full-day mediations with Jill Sperber of Sperber Dispute Resolution and Judge Holderman. The mediations took place over the course of approximately four months and required extensive preparations. As a result of these substantial and protracted mediations, Class Counsel was able to negotiate a settlement in principal that provided substantial monetary benefits to the Class Members. Subsequently, Class Counsel then researched potential settlement structures, analyzed settlements and notice procedures in similar cases, reviewed discovery records, and regularly engaged in telephonic conferences and email

exchanges. Class Counsel also engaged with Heffler Claims Group, the Settlement Administrator, to review the class data and devise a settlement administration plan that would provide both effective notice to Class Members as well as keep settlement administration expenses as low as practicable. After months of research and discussions, the Parties were able to finalize the Settlement which provides immediate and direct benefits to the Class. Class Counsel then researched and drafted Plaintiffs' motion for preliminary approval, which was granted by the Court.

- **Settlement Administration.** After the Court granted preliminary approval, Class Counsel worked extensively with the Settlement Administrator in drafting and editing numerous notice documents, including: (1) postcards that were mailed to Class members; (2) notices that were emailed to Class members; (3) notices that were displayed on websites online, including on Act II's Facebook page; (4) claim forms and explanatory materials; and (5) information posted on the settlement website. In addition, Class Counsel oversaw the administration of notice to Class members, including handling nearly one hundred class member inquiries.

While a lodestar cross-check is not necessary in deciding fee petitions, *see Williams v. Rohm and Haas Pension Plan,* 658 F.3d 629, 636 (7th Cir. 2011) (holding that a district court need not consider the petitioner's lodestar), such an examination also shows that the requested fees are reasonable. Here, Class Counsel's fee request of $1,800,000 reflects a 1.7 multiplier on its base lodestar of $1,038,402. (McLawhorn Decl. ¶4.) Courts have approved multipliers of up to and beyond four (4). *See, e.g., Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (multiplier of 2.5); *In re Cenco, Inc. Secs. Litig.,* 519 F. Supp. 322, 327 (N.D. Ill. 1981) (multipliers of 4 and 2); *Arenson v. Bd. of Trade of City of Chi.,* 372 F. Supp. 1349, 1359 (N.D. Ill. 1974) (multiplier of 4); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.,* No. 16-cv-157, 2017 WL 5665848, at *8 (E.D. Cal. Nov. 27, 2017) (multiplier of 3.95); *Cifuentes v. CEVA Logistics U.S., Inc.,* No. 16-cv-1957, 2017 WL 4792425, at *7 (S.D. Cal. Oct. 23, 2017) (multiplier of 3); *see also Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.") (citation omitted); 1 Alba Conte, *Attorney Fee Awards* § 2.06, at 39 (2d

ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multipliers of 5 or 10 times the lodestar.").[4] Accordingly, Class Counsel's fee request is well within reason.

**B.      Class Counsel Should Be Reimbursed For Its Out-Of-Pocket Expenses.**

Additionally, Class Counsel should be reimbursed for its out-of-pocket expenses of $24,349.02. (McLawhorn Decl. ¶7.) Pursuant to Fed. R. Civ. P. 23(h), a court may award "reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties' agreement." Courts regularly award reimbursement for expenses that are reasonable and necessarily incurred. The costs incurred here, detailed in the supporting declaration of Class Counsel, were incurred in the prosecution of this case. (*Id.*) Now that the case has settled successfully, those costs can be reimbursed from the Settlement Fund. *See City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 911 (N.D. Ill. 2012) (awarding fees and costs); *McCue*, 2015 WL 4522564, at *3 (same); *Zolkos v. Scriptfleet, Inc.,* No. 12 Civ. 8230 (GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (same).

**C.      The Incentive Awards Sought By Plaintiffs Are Appropriate.**

"Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Castillo v. Noodles & Co.,* No. 16-cv-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive awards serve the important purpose of compensating plaintiffs for the time and

---

[4] *See also In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp. 2d 587, 589 (E.D. Penn. 2005) (multiplier of 6.96); *DiGiacomo v. Plains All Am. Pipeline,* No. H-99-4137, 2001 WL 34633373, at *10-11 (S.D. Tex. Dec. 19, 2001) (multiplier of 5.3); *In re Charter Comm's., Inc. Sec. Litig.,* No. MDL 1506, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.61).

effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Castillo,* 2016 WL 7451626, at *2. Here, Plaintiff West seeks a $10,000 incentive award for her contributions to the case. Plaintiffs Hollander and Zimmerman each seek a $5,000 incentive award for their contributions to this case. Plaintiffs Roman, Esposito, and Ballon each seek a $2,500 incentive award for their contributions to this case.

Courts consider three factors in their examination of the reasonableness of a requested service award: (1) the actions the plaintiff took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Id.* at *3 (citing *Cook,* 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012)). In this case, all six named Plaintiffs undertook substantial direct and indirect risk. They agreed to bring the action in their names and were ready to be deposed and to testify if there was a trial. In so doing, they assumed significant risk that "should the suit fail, [they] may find [themselves] liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872, 876 (7th Cir. 2012) (citations omitted). "The incentive award is designed to compensate [them] for bearing these risks." *Id.* In addition, all six named Plaintiffs expended considerable time in aiding Class Counsel's investigation of their claims.

Accordingly, Plaintiffs Roman, Esposito, and Ballon should each be awarded $2,500 for their services in this case, which included providing documents and answering interrogatories. Further, Plaintiffs Hollander and Zimmerman should each be awarded $5,000 for their services, because in addition to responding to written discovery, they were deposed in this case, and

performed significant work to provide a wealth of documentation to support their claims on behalf of the Classes. Finally, Plaintiff West should be awarded $10,000 for her services because of her extraordinary contribution: In addition to responding to discovery requests and having her deposition taken, Plaintiff West (a now-retired school teacher from Iowa with no prior involvement with class actions) sought out Class Counsel for this case, gathered documents that enabled Class Counsel to prosecute the case, spent countless hours meeting with and talking to Class Counsel concerning Act II's business and the manners in which various class members had been harmed, facilitated Class Counsel's interview of multiple witnesses and class members, attended one mediation in person and the others telephonically (as necessary), and served as the lead plaintiff in the litigation. Plaintiff West's contribution both reduced Class Counsels' time in this case and reduced the litigation expenses necessary to prosecute this case. Courts in this circuit and others have approved similar incentive awards. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *2 (N.D. Ill. Oct. 3, 2013) (awarding $15,000 incentive award), *amended on other grounds,* 2014 WL 2809016 (N.D. Ill. June 20, 2014), *aff'd,* 799 F.3d 701 (7th Cir. 2015); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.,* 844 F. Supp. 1226, 1269 (N.D. Ill. 1993) (awarding $30,000 incentive award).

Accordingly, Plaintiff West respectfully requests that the Court award her an incentive award of $10,000; Plaintiffs Hollander and Zimmerman respectfully request that the Court award each of them incentive awards of $5,000; and Plaintiffs Roman, Esposito, and Ballon respectfully request that the Court award each of them incentive awards of $2,500.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request an attorneys' fee award of $1,800,000, which represents one-third of the Settlement Fund after deduction of settlement administration expenses. Plaintiffs also request an award of unreimbursed litigation costs in the amount of $24,349.02, and incentive awards of $10,000 (to Plaintiff West), $5,000 (to Plaintiffs Hollander and Zimmerman) and $2,500 (to Plaintiffs Roman, Esposito, and Ballon). Plaintiffs submit these requests are fair, appropriate, and reasonable, and respectfully request the Court enter an Order approving these amounts.

Dated: March 23, 2018

Respectfully submitted,

By: *s/ Todd L. McLawhorn*
Joseph J. Siprut
*jsiprut@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

***Counsel for Plaintiffs
and the Settlement Classes***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Motion For Attorneys' Fees, Costs And Incentive Awards** was filed this 23rd day of March 2018 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.


*/s/ Todd L. McLawhorn*